0667 people of the state of Illinois by Justin Nicolosi v. Patrick Legoo, upon by Jay Wigman. Mr. Wigman, good morning. Afternoon. I was May it please the court, counsel, I am Jay Wigman, an assistant public defender with the Office of the State of Public Defender. Counsel for defendant Paul Patrick Legoo, who asserts that he was not proved guilty of the offense of unlawful presence of a convicted sex offender in a public park because the plain language and statutory scheme that limits the places where a convicted sex offender may be present clearly states that the presence in a public park of a convicted sex offender is not unlawful if the person's minor child is also present in the park. The facts of this case are very simple and they are also indisputable, which is part of the reason that the standard of review here is developed. The defendant was a convicted sex offender. His minor son was in a public park, a baseball park, watching a baseball game when one of the three diamonds was in the park. The defendant spoke with his son and told him that it was getting late, it was time to come home. The son refused. The defendant left the park. He was in there for a period of less than five minutes. One of the spectators at the baseball game was a police officer with the Minnesota Police Department. He called into the police department, confirmed that the defendant was a convicted sex offender. Another officer went to the defendant's house. He was charged under a misdemeanor, Section 9.4-1B of the Act. This is a misdemeanor that was enacted in 2011 and that charged him and that specifically states, quote, it is unlawful for a sexual predator or a child sex offender to knowingly be present in any public park building or on a real property that was enacted in 2000, Section 9.3A-10 of the same article. And it's one of about a dozen prescriptions against a defendant being within a public school or a fairground is another place that he is prohibited. Typically the language starts as this does, referring to a sex offender. And that quotation is as follows. It is unlawful for a child sex offender to knowingly be present in any public park building, a playground or recreation area within any publicly accessible, privately owned building or on real property comprising any public park when persons under the age of 18 are present in the building or on the grounds and to approach, contact or communicate with a child under 18 years of age. Unless the offender is a parent or child. The question that animates this case is simply this. Must these two sections be read together? The defendant respectfully asserts that the answer to that question is yes for three reasons. The first is that the rules of statutory interpretation require that these two be read together. The both of the subsections and the article as a whole. And the third is that to interpret this otherwise would lead to absurd results. The most important being that it essentially renders 9.4B unconstitutional in its application. Turning to the first argument that the rules of statutory interpretation require that these two sections be read together, case law is clear that sections ought to be read together to provide harmony between the sections. And a reviewing court must consider the statute in its entirety as stated by the Supreme Court in People v. Davis in 2002. Sections in each of the sections says it is unlawful. It doesn't say that it is a misdemeanor. It doesn't say that it is a felony. More specifically, it doesn't say, as is found in some statutes, it is a violation of this section. It simply says it is unlawful. Because what the statutes have been designed to do in the way they have served for a period of almost 20 years is to protect children in certain safe zones, specifically in schools, next in parks, and then in other areas and other circumstances. But at the same time, the statutes as written have always protected the liberty interest of a parent in the raising of his or her child. And in a school, a place clearly that we want to be safe for children, a parent is allowed, under some strict supervision rules, to attend the school, to go to parenting conferences, to go to activities that the child participates in. In a park, this same right applies. A parent should have the ability to go to his son's baseball game or to watch a baseball game with his child, to go collect leaves in the park, to take a child to a merry-go-round. It has been consistent throughout the 20 years that these statutes have been in place that the goal is to protect a child in these places, but also to allow families to interact together, whether or not those families, including those who have been convicted of a sex offence. In this way, reading these together can be done harmoniously. Section 9.3.8.10 makes it a felony when a child is present and a person approaches a child or has communication or contact with a child, unless that parent is there with or in the park at the same time as his or her child. 9.4.b makes it a misdemeanor for mere presence within the park, whether or not children are present. In this fashion, then, there is an exception that allows a parent to be present in a park when he has a constitutionally protected interest. In this way, it's distinguished from PEPT, in which there was no constitutional interest to be protected. The man was walking his dog. There is nothing that's protected there. But where a parent is present in a park with his child or at the same time the child is present, there is a constitutionally protected interest that must be preserved there. And that's in accord with the legislative intent. Again, courts should ascertain and give effect to the overall intent of the drafters. And throughout the statutes as written, there has always been an allowance for a parent to be present in a public place or in a school or in some other instances where children are going to be present, as long as that child is also present. There are simple examples that can be given. There are prohibitions against a convicted sex offender dressing up as Santa Claus unless it's at a private family function and his children are present and no other children are present. Easter is the same kind of thing. It is only in those instances where residency is a requirement or an issue that there is no distinction for whether a child is present or not. But you'll note that the provision regarding a public school states as well, it is unlawful for a person to be on the school ground when children are present, when somebody under the age of 15 is present. The course and history of the statute and its evolution, starting with schools, adding parts, and then adding more than a dozen other provisions, clearly demonstrates that the goal of the legislature was to protect children while at the same time protecting the family unit and allowing the family involved. Finally, what we turn to is that there are certain results that occur if these statutes are read as if they were in a vacuum. And there would be no way for any parent who read 9.3A10 would clearly believe that his presence or her presence was lawful within the park, not knowing that 9.4, as interpreted by the state, prevents his appearance in the park, even though his child is present and the family unit is to be protected. That renders the statute potentially unconstitutional as it is applied to citizens because of the protected liberty interest that is possessed by Mr. Lucero. Was that raised in the trial court? The protected liberty interest? I don't believe that was specifically addressed. The ultimate language of the two statutes was addressed. The specific question as to whether it was unconstitutional was not. As applied. Doesn't Bingham prohibit us from doing anything with that? Well, our argument here is not that it's unconstitutional. It's that if you read these statutes in isolation and don't apply them together, that it creates the possibility that it would be a constitutional violation. And the Supreme Court of the United States has been clear in saying that if there are two possible interpretations that can fairly be made, that if one presents constitutional issues, that should be avoided. And that's what I'm saying in this instance, is that one of the results of reading the statutes as they were read by the trial court is that it potentially creates a constitutional problem. It also creates a logical difficulty in that, as the court pointed out in the trial level, here you can apparently be on the grounds, but you can't be on the grounds according to 9.4, so you're not committing a felony, I'm sorry, you're not committing a misdemeanor, and you're not committing a felony when the child is there. There's a logical inconsistency that doesn't play out properly. It also creates the difficulty that not only would a parent not have the privilege of time spent with his child, but the parent might be prohibited from being able to follow the duties of a parent. If a parent and a child are walking down the street, and let's imagine that it's a four-year-old child, and the child runs into a park, suddenly the parent is faced with the decision, do I break the law by going into the park because I'm a convicted sex offender, or do I break the law by abandoning my parental role and allowing my child to run into a park unattended and possibly out of my view? It creates a difficulty for parents, not just with, again, the parental rights and privileges that they enjoy, but the duties that they have. Because there are absurd results that stem from reading these in isolation, when clearly these statutes were meant to be written together so as to provide both a protection of the child and a protection of the family, we believe that this court should now reverse the defendant's conviction. Are there any further questions? Thank you. Mr. Nicolosi, good afternoon. Good afternoon. Your Honor, may it please the Court, counsel. Your Honor, the defense spent a lot of time and was brief in an argument kind of going over the history of these statutes, 9.3 and 9.4, the legislative histories and the progression of the statutes as they kind of arrive in their current forms, and using those histories to compare and essentially interpret what the legislature might have meant by 9.4 and 1B. But the state submits that these statutes don't need any interpretation because they're very clear. The Supreme Court has even in the last year's epitome summarized what 9.4-1B basically says in one sentence. The court said that that subsection completely barred sex offenders from public parks. It's as simple as that. That's what the Supreme Court said last year. The state submits the language of the statute is that clear. So does that then void the language in the felony statute? Your Honor, no, it certainly doesn't void the language in the felony statute, but these are distinct statutes. He was not charged with the felony statute under 9.3-10. He was charged under 9.4-1B. So it's more of a limitation on charging, do you think? Absolutely, absolutely. You can be guilty of 9.4-1B and not be guilty of the felony in 9.3-10 and vice versa. I don't think, and I don't know if that was the case. I can't even imagine a scenario where you can basically cut and paste the exception in 9.3-10, that statute that was not even used to charge the defendant in this case, and apply it to another subsection under which the defendant was charged. If the legislature wanted to put that exception where a sex offender's child is in the park and exempt a parent from prosecution under 9.4-1B, the legislature certainly could have done that. They did that in 9.3-10. They could have clearly done that in 9.4-1B. The legislature didn't do that, and that's because they didn't want an exemption for that statute, that particular subsection. The Supreme Court interpreted that statute. And if you look at the legislative history, which I don't state our use of this. We don't really need to because this is crystal clear. But if you want to go into the legislative history, you can look at Senator Althoff's comments that kind of led to the creation of the bill that became the statute. And I put those quotes in my brief. I don't need to read them as they appear in the comments. But I think the Senator makes it pretty clear that the purpose of 9.4-1B is to prohibit sex offenders from being in the park, to prevent residents, children, from the dangers that parks present. And I think the Senator's comments are quite clear on that point. There's no debate that 9.4-1B applies to this case. The defendants were in the park. There's no debate there. Has every violation stand on its own? Let's say he was charged and convicted three times. Is it always just a misdemeanor? I believe it does eventually get to a felony, but I couldn't tell you how many instances of conviction under 9.4-1B go to a felony. But, again, those aren't the facts of the park. Different facts can weigh you out. That may create a different argument. And so if that was ever the case, then that felony provision might or might not apply at that point. I think it depends on how he's charged, sort of on what subsection he's charged. But, again, none of the facts. And here, there is no exemption to the prediction that there's a statute under 9.4-1B where the defendant was charged and the state would submit that, that the prosecution approved him guilty of the conduct of that subsection. It would be unreasonable doubt that this court should affirm that conviction. Is there any other questions? Thank you. Mr. Wegman, any rebuttal? Thank you. Somewhat briefly in reply, I would note that Pepitone doesn't truly apply to this case because of the different factors, the different interests that were at issue. In Pepitone, it was a man who had no constitutional reason to be willing to comply. Here, a parent has a constitutional right to be present with his child in the park. And that's recognized elsewhere throughout the statute. And it's clear that statutes are meant to be read together. But when the state speaks about the plain language of the statute, it generally refers to this being a felony offense or a misdemeanor offense. But the plain language of the statute talks about whether or not it's unlawful. And whether or not it's unlawful does not hinge on whether it is a misdemeanor or a felony, but whether it's a violation of the law. And whether it's a misdemeanor or a felony, it is. When the statute says in 90.3 that it is not unlawful to be present when your child is there, but the defendant is prosecuted under a provision that again talks about whether it's unlawful to be present, and that overrules 90.3, then as Justice O'Brien asked, in fact, it does void 90.3. The effect of it does that. And it's clearly within 90.4B or perhaps 90.4C, but within 90.4 it is indicated that it becomes a felony on the second prosecution. So now that Mr. LeGue has been convicted of an offense that he could not have been convicted of a felony before, now for a second time he would be convicted as a felon in that case. And I agree with the state that the goal of 90.4B was to prevent a sex offender from entering into a park when he didn't have a reason or a right to be in a park, and to protect children in that fashion. And it is clear that the 90.4B does not set forth any sort of exception for a parent who is there with his child. But part of the reason for that may well be the fact that there already existed an exemption. 90.3 had this covered. And considered consistently with those two in harmony, you can view 90.4 as preventing a sex offender from being in a park when no child is present in the park. When a child is present, 90.3 says that that's okay if it's the defendant's child. In this fashion, those two can be read together again harmoniously to achieve the purposes of the legislature as has been established over the course of the last 20 years. If there are no further questions. I have a question. There's a difference in the definitions of who those two sections apply to. Predators are included under the felony version of it. Does that have an impact on your argument? It doesn't. To the extent that, I believe that predators were then later added as well to the park provision. But when it was added in 2011, it indicated, it both expanded and shrunk the definition. It indicated that sex predators were added to that and it took out what has been referred to sometimes as the Romeo and Juliet offenders. Where there was a very narrow age difference and it was a consensual matter in general between minors or adults. So that's the misdemeanor provision. That's the misdemeanor, right. So doesn't it make less sense to grant the exception for the felony than it does for the misdemeanor? Well, what makes the felony more significant is the communication with the child. It's not just presence in the park when a minor is present. But communicating, approaching, talking to, contacting that child. And so it makes equal sense for sex predators and for convicted sex offenders to be committing a felony when it is that type of involvement with the child. There's still an inherent protection that needs to be put in place in a park generally. And that's what was done in 9.4 is to prevent a sex offender from being in the park. Except as in 9.3 when that parent has not only a reason but a constitutionally protected right to be present when there's a murder trial. Thank you. Thank you. Any other questions? Thank both of you for your arguments this morning and afternoon. And we will take matter under advisement. We'll issue a written decision as quickly as possible.